## A98A0948. HARRIS v. THE STATE.
(505 SE2d 49)

RUFFIN, Judge.

Sonell Harris was charged with aggravated assault, simple battery, theft by taking, possession of a firearm by a convicted felon and possession of a firearm during the commission of a crime, i.e., aggravated assault. A jury found Harris guilty on the theft by taking and possession of a firearm charges, but not guilty on the aggravated assault and battery charges. Harris appealed, asserting that he could not be found guilty of the possession of a firearm during the commission of a crime charge since he was not found guilty of aggravated assault. Harris additionally asserts that the evidence was insufficient to convict him of theft by taking, that the State impermissibly placed his character into evidence, and that he was denied effective assistance of counsel. For the following reasons, we affirm in part and reverse in part.

1. " 'On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant . . . no longer enjoys a presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) [(1979)]. Conflicts in the testimony of the witnesses, including the State's witnesses, [are] a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.' [Cit.]" *Howard v. State*, 227 Ga. App. 5, 8 (6) (a) (488 SE2d 489) (1997).

Viewed in this light, the evidence shows that Harris was acquainted with Kathy Sapp and Kim Lewis, who lived together in an apartment with their children. One evening at approximately 11:30 p.m., Harris went to their apartment and asked to borrow money.

Sapp testified at trial that during Harris' uninvited visit, Lewis and Harris began arguing and both she and Lewis told Harris to leave their apartment. Sapp testified that Harris grabbed her and then Lewis. After much struggling with Harris to get him out of the apartment, Sapp said, Lewis retrieved a gun from her bedroom in an attempt to make Harris leave. But Harris continued arguing with Lewis and Sapp. At one point, all three began struggling for possession of the gun. Eventually, Harris got the gun and aimed it at both Lewis and Sapp. Sapp testified that Harris pulled the trigger four times while pointing it at Lewis and one time while pointing the gun at her. However, there was only one bullet in the gun, and the gun did not fire in these first five attempts. Sapp testified that when

Harris pointed the gun at Lewis in an attempt to fire the gun a sixth time, Sapp grabbed Harris' hand and attempted to push the gun away from Lewis' direction. At that instant, the gun fired, hitting the bottom of a sofa. After the gun fired, Harris ran out of the apartment, carrying the gun, Sapp said.

Lewis testified, corroborating Sapp's recollection of events. Lewis further testified that Harris slapped her in the face. Lewis stated that she owned the gun and that she did not give Harris permission to take it.

In support of the possession of a firearm by a convicted felon charge, the State introduced certified copies of Harris' prior 1991 felony convictions.

(a) We find that the evidence was sufficient for any rational trier of fact to find Harris guilty of theft by taking and possession of a firearm by a convicted felon beyond a reasonable doubt. See *Jackson v. Virginia*, supra.

(b) Regarding the conviction for possession of a firearm during the commission of a crime, both Harris and the State agree that the holding in *Strong v. State*, 223 Ga. App. 434 (477 SE2d 866) (1996), controls.

Similar to Harris' charges in this case, Strong was charged with aggravated assault and possession of a firearm during the commission of a felony, i.e., aggravated assault. Strong was acquitted of the aggravated assault charges but found guilty of the firearm possession charge. We held that "[b]ecause the jury acquitted Strong of an essential element of the felony firearm charge, the aggravated assault charges upon which her felony firearms indictment was predicated, the jury's verdict on the felony firearms charge is not merely inconsistent . . . , [but] it is mutually exclusive and therefore contrary to law. [Cit.]" *Strong*, supra at 434-435. We accordingly reversed Strong's conviction as to the possession of a firearm charge. Id.

Here, Harris' conviction of possession of a weapon during the commission of a felony has to stand or fall in conjunction with the underlying felony — the aggravated assault upon Lewis and Sapp. See *Strong*, supra. Since he was acquitted of the aggravated assault, we must reverse the possession of a firearm during the commission of a crime conviction. See id.

2. Harris asserts that the trial court erred in allowing Lewis and Sapp to testify regarding Harris' drug use, which impermissibly placed his character into evidence.

Sapp testified that after Harris first entered the apartment, she and Lewis started "talking to him and telling him he needed to get his life together, and . . . stop using drugs and like that, because he had some white stuff around his nose." Harris did not object to this

testimony, and on cross-examination, defense counsel questioned Sapp regarding her conversation with Harris over his drug habit.

Lewis testified that she and Sapp had told Harris prior to the night of the incident not to come to their apartment because "[w]e knew he was dealing in drugs, he was on them, and so, we didn't want that around . . . our kids." She also said that while Harris was in their apartment that night, she and Sapp told him "to get off the drugs [and] get his life together. . . ." Harris did not object to these statements, and defense counsel asked Lewis on cross-examination whether Harris was intoxicated or under the influence of drugs on the night of the incident.

Finally, Harris, who testified on his own behalf at trial, admitted that either Lewis or Sapp had called him a "crack head."

We conclude that Harris waived his right to assert this issue on appeal by failing to object to the statements at trial. " 'A party cannot during the trial ignore what he thinks to be an injustice, take his chances on a favorable verdict, and complain later.' [Cit.]" *Maxwell v. State*, 170 Ga. App. 831, 835 (3) (318 SE2d 650) (1984). "As this is a court for the correction of errors, we will not consider any issues raised on appeal that were not raised and preserved in the trial court. [Cit.]" *Cheesman v. State*, 230 Ga. App. 525, 526 (2) (497 SE2d 40) (1998). See also *Lawson v. State*, 224 Ga. App. 645, 646 (2) (481 SE2d 856) (1997).

Moreover, Harris contributed to any asserted error by introducing further evidence of his drug habit through his testimony and his attorney's cross-examination of both Lewis and Sapp. Harris and his attorney opened the door for such testimony by their participation, and this coupled with their failure to object precludes Harris from raising the issue on appeal. See *Reynolds v. State*, 231 Ga. App. 33, 37 (5) (497 SE2d 580) (1998).

Moreover, even if Harris had timely objected and not elicited this evidence during cross-examination and by his own testimony, the victims' testimony that Harris appeared to be on drugs that evening was relevant evidence of Harris' state of mind and admissible as part of the res gestae. See *Pless v. State*, 260 Ga. 96, 98 (2) (390 SE2d 40) (1990).

Furthermore, even though the victims' testimony incidentally put Harris' character into evidence, their testimony was admissible to explain their motives, intent, and course of conduct in not wanting Harris in their home. See *Page v. State*, 159 Ga. App. 344, 345 (3) (283 SE2d 310) (1981). Accordingly, the trial court properly allowed the State to introduce evidence concerning Harris' drug use.

3. Harris asserts that he received ineffective assistance of counsel because his trial counsel failed to move to bifurcate the possession of a firearm by a convicted felon charge from the other charges and

failed to object when the State introduced Harris' prior convictions in support of the possession of a firearm count.

"A defendant claiming ineffective assistance of counsel must show (1) that his attorney's representation in specified instances fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. [Cit.] The decisions on which witnesses to call, whether and how to conduct cross[-] examinations, what jurors to accept or strike, what trial motions should be made, and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his client. [Cit.]" (Punctuation omitted.) *Richards v. State*, 232 Ga. App. 584, 588-589 (5) (502 SE2d 519) (1998).

At the hearing on Harris' motion for new trial, his trial attorney testified that he met with Harris a dozen times in preparation for the trial. According to trial counsel, he discussed severing the charges with Harris, but they agreed to try all the charges together since it was Harris' intention to get an acquittal on the aggravated assault count. And, trial counsel was able to obtain an acquittal on the aggravated assault charge as a result of this trial strategy.

Trial counsel's decision not to move for a bifurcated trial was not the result of inadequate preparation but the result of his choice of trial tactics based on his conversations with Harris. See *Richards*, supra. Moreover, trial counsel's failure to object to the introduction of Harris' prior convictions was also part of the trial strategy to allow all the counts to be tried together; it was not a result of unprofessional errors. See id.

Additionally, Harris has failed to show that, despite the evidence of his guilt, there is a reasonable probability that but for his counsel's allegedly deficient performance the results of the trial would have been different. See *Richards*, supra. Accordingly, we find that Harris was not denied effective assistance of counsel.

*Judgment affirmed in part and reversed in part. Pope, P. J., and Beasley, J., concur.*

DECIDED JULY 23, 1998 —
RECONSIDERATION DISMISSED AUGUST 26, 1998.

Sonell Harris, *pro se*.
C. Jackson Burch, for appellant.
*Spencer Lawton, Jr., District Attorney, Christine S. Barker, Assistant District Attorney*, for appellee.