A09A1164. REYNOLDS PROPERTIES, INC. v. BICKELMANN.
(685 SE2d 450)

MILLER, Chief Judge.

Reynolds Properties, Inc., d/b/a Coldwell Banker Lake Oconee Realty ("Coldwell") sued Bruce A. Bickelmann ("Bickelmann") seeking its commission on a real estate transaction that failed to close. Following a hearing on cross-motions for summary judgment, the trial court granted Bickelmann's motion and denied that of Coldwell. Coldwell now appeals. Finding that Coldwell's claim lacks a basis in the contracts of the parties, we affirm.[1]

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the non-moving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the

---

[1] In light of our disposition of this complex case, Bickelmann's motion for penalty for frivolous appeal under Court of Appeals Rule 15 is hereby denied.

documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case. . . . Our review of an appeal from summary judgment is de novo.

(Citations, punctuation and emphasis omitted.) *Mohamud v. Wachovia Corp.*, 260 Ga. App. 612 (580 SE2d 259) (2003).

The undisputed facts show that Mary and Larry New entered into a Georgia Association of Realtors ("GAR") "Exclusive Seller Listing Agreement" (the "Listing Agreement") with Coldwell, a real estate broker, to list the News' lake house (the "Property") for sale. The Listing Agreement provided, in part, that

> Seller agrees to pay Broker at closing a commission . . . of 7 percent (%) of the sales price of [the] Property. . . . Broker shall share the Commission with a cooperating broker . . . who procures the buyer of Property by paying such cooperating broker 3.5 percent (3.5%) of the sales price of Property. . . .

Further, the Listing Agreement provided:

> In the event Seller sells or contracts to sell Property to any buyer introduced to Property by Broker within 180 days after the expiration of the Listing Period, then Seller shall pay the commission referenced above to Broker at the closing of the sale or exchange of Property. Notwithstanding the above, in the event that Property is sold to the prospective buyer by or through another licensed broker with whom Seller has signed an exclusive right to sell listing agreement, then no commission shall be owed to Broker by virtue of this Agreement. The commission obligations set forth herein shall survive the termination of this Agreement.

The News' house had been on the market for nearly a year when, on March 24, 2007, Bruce A. Bickelmann entered into a GAR "Purchase and Sale Agreement" (the "Contract") with the News and Coldwell to purchase the Property for $985,000. Paragraph 16 (B) of the Contract provided, among other things, that

> in the event the sale is not closed because of Buyer(s) and/or Seller(s) failure or refusal to perform any of their obligations herein, the nonperforming party shall immediately

pay the Broker(s) the full commission the Broker(s) would have received had the sale closed, and the Selling Broker and Listing Broker may jointly or independently pursue the non-performing party for their portion of the commission.

Closing on the Property was scheduled for July 30, 2007. In the interim, however, Bickelmann "decided not to complete the transaction" and executed a standard form GAR "Termination and Release Agreement" which his realtor, Jack Shortridge, presented to the News. The Termination and Release Agreement declared the following:

> In consideration of Ten Dollars cash in hand paid by each of the undersigned parties to the other and in further consideration of the mutual promises and benefits flowing among the parties hereto, it is agreed among the undersigned Buyer(s), the undersigned Seller(s) and the undersigned Broker(s) that the Purchase and Sale Agreement (the [Contract]) with a Binding Agreement Date of the 24th day of March, 2007, among said Buyer(s), said Seller(s) and said Broker(s) for the purchase and sale of [the Property] is effective this date, terminated by mutual agreement for the following reasons: . . . Buyer has decided not to complete the transaction[,] and that the earnest money deposited under said Purchase and Sale Agreement shall be paid in the following manner and is approved and authorized by all parties hereto: $15,000.00 to Larry New.

> Now therefore, in consideration of the benefits to be derived hereunder, the mutual covenants contained herein and the distribution of $15,000.00 earnest money, each of the undersigned parties hereby dismiss[es], releases and forever discharges each other undersigned party and the heirs, executors, successors, assigns, officers, agents and employees of each other undersigned party of and from any and all claims, demands, causes of action, suits, sums of money, damages, and judgments whatsoever, in law and equity, whether known or unknown, which any of the undersigned has ever had, now has or may or might have in the future against any of the other undersigned parties arising out of or in connection with the said Purchase and Sale Agreement and the rights and obligations of the undersigned parties thereunder. . . .

The undersigned Broker(s) join(s) in this Agreement for the sole, limited, and exclusive purpose of allowing the Earnest money to be distributed as set forth above.

Broker(s) expressly do(es) not release or waive any rights with respect to any real estate commission which may be due and payable to Broker(s) under the terms of the [Contract] herein above described. Seller agrees to pay to Broker(s) the real estate commission set forth in the [Contract] herein above described, if within 180 days after the date of this Termination and Release Agreement, Property is sold, exchanged or conveyed to the above named Buyer(s), unless Property is sold to such Buyer(s) through another licensed real estate broker with whom the Owner had an exclusive listing agreement.

Shortridge, thereafter, proffered the Termination and Release Agreement to Coldwell's agent, Andrew Miller, for the News' action. The News accepted the Termination and Release Agreement, and the document was duly executed by Bickelmann, the News, Miller, and Shortridge. Consequently, the July 30 closing was cancelled, and the $15,000 earnest money paid by Bickelmann was surrendered to the News, prompting the underlying complaint for breach of contract by which Coldwell sought to recover the $33,000-plus commission it would have been paid had the sale of the Property closed.

Coldwell contends that summary judgment for Bickelmann and against it was error, arguing that, as a real estate broker, representing a seller, it is entitled to pursue a commission from a buyer, who in breach of a purchase and sale agreement, refused to close. We disagree.

Each contract by which one employs another to sell real estate must be construed according to its particular stipulations. The first rule that courts must apply when construing contracts, including real estate contracts, is to look to the plain meaning of the words of the contract. The matter of contract construction is a question of law for the Court that is subject to de novo review.

(Citations and punctuation omitted.) *D.R. Horton, Inc.-Torrey v. Tausch*, 271 Ga. App. 511, 512 (1) (610 SE2d 151) (2005).

The record plainly shows that the Contract, in its entirety, was terminated by the Termination and Release Agreement of the parties, the News and Bickelmann as the sellers and buyer, respectively. Given the termination of the Contract in such manner,

Bickelmann was relieved of the obligation to proceed to closing, foreclosing any right to a commission in Coldwell arising under paragraph 16 (B) of the Contract for nonperformance. And because the News did not sell the Property to Bickelmann within 180 days of the date the Termination and Release Agreement was executed, Coldwell's right to a commission as set forth in the Listing and Termination and Release Agreements was not triggered on that account, and, in any event, those agreements provide for a commission paid by the seller not the buyer.

Coldwell having failed to demonstrate a contractual right to a commission on the transaction, as above, the trial court did not err in granting summary judgment for Bickelmann and denying summary judgment to Coldwell. *Mohamud*, supra, 260 Ga. App. at 612.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED OCTOBER 15, 2009.

*Kristine Moore Tarrer*, for appellant.

*Martin Snow, Thomas P. Allen III*, for appellee.

*Weissman, Nowack, Curry & Wilco, Seth G. Weissman, Ned Blumenthal*, amici curiae.